**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

JOSE EMILIO OCHOA PARACHICO,
Petitioner,
v.
FERETI SEMAIA, *et al.*,
Respondents.

Case No. 2:26-cv-06409-DMK

**MEMORANDUM AND ORDER DENYING PETITION WITHOUT PREJUDICE**

On June 11, 2026, Petitioner Jose Emilio Ochoa Parachico, an immigration detainee, proceeding through counsel, filed a Petition for Writ of Habeas Corpus by a Person in Federal Custody under 28 U.S.C. § 2241, challenging his detention by United States Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California, and seeking immediate release. *See* ECF 1.[1] For the reasons below, the Petition is DENIED without prejudice.

[1] For ease of reference, the Court cites the parties' submissions using the pagination generated by the Court's CM/ECF system.

**I**

Petitioner is a native and citizen of Guatemala. ECF 1 at ¶ 1. On June 8 and June 15, 2004, U.S. Border Patrol apprehended Petitioner near Douglas, Arizona, after he entered the United States without inspection, and returned him to Mexico each time. ECF 1-1 at 3. He later entered the United States without inspection and has since lived in the United States for approximately 20 years. *Id.*; ECF 1 at ¶ 20. He has U.S. citizen children and no criminal record. ECF 1 at ¶ 20; *see* ECF 1-1 at 3.

On December 25, 2025, ICE officers conducting a targeted enforcement operation in Corona, California, encountered Petitioner and another man near the last known address of the individual they were seeking. ECF 1 at ¶¶ 3–5, 22; ECF 1-1 at 2. Neither Petitioner nor his companion was the subject of the operation. *Id.* According to the Record of Deportable/Inadmissible Alien (Form I-213), when the officers approached and identified themselves, "both of the Hispanic males attempted to flee," and the officers "pursued both males and detained them." ECF 1-1 at 2. Petitioner disputes that account; he alleges that his companion fled and that he did not. ECF 1 at ¶¶ 5, 40–41. Petitioner admitted to the officers that he is a citizen of Guatemala without legal status in the United States. ECF 1-1 at 2. ICE arrested him without a warrant, ECF 1 at ¶¶ 3, 6, and served him with a notice to appear charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i), ECF 1-1 at 3.

On June 9, 2026, an immigration judge ("IJ") found Petitioner removable, denied his application for cancellation of removal, and granted him post-conclusion voluntary departure under safeguards, with an alternate order of removal to Guatemala. ECF 8-1 at 1–4. Petitioner reserved appeal. *Id.* at 4. The records of the Executive Office for Immigration Review reflect that the Board of Immigration Appeals ("BIA") received Petitioner's appeal on June 17, 2026, and that the appeal remains pending.[2] ECF 9 at 11–

[2] *See* Executive Office for Immigration Review, Automated Case Information, https://acis.eoir.justice.gov/en/ (search: A-number 221462451 and Guatemala), (last accessed October 15, 2026).

12; *see* ECF 14 at 2. The Court takes judicial notice of those records. *See* Fed. R. Evid. 201(b)(2).

On July 6, 2026, an IJ held a custody redetermination hearing, at which the government bore the burden of proof. ECF 8-2; ECF 14-1. The IJ denied bond, finding that the Department of Homeland Security "has proven, by clear and convincing evidence, that Respondent is a flight risk," and that "[t]his risk cannot be mitigated by the imposition of a bond." ECF 14-1. The IJ relied on Petitioner's three attempts to enter the United States without inspection in June 2004, the first two of which ended in apprehension and voluntary return; his pending appeal of the denial of cancellation of removal; his grant of voluntary departure and his stated intention to depart voluntarily if not offered bond; and the absence of an identified sponsor or any ability to finance a bond. *Id.* The IJ acknowledged that Petitioner has a long-standing fixed address and two U.S. citizen children. *Id.* Both parties waived appeal. *Id.*; *see* ECF 13 at 2.

Petitioner filed the instant Petition on June 11, 2026, asserting five claims: (1) his warrantless arrest violated the Fourth Amendment (Count One); (2) his arrest violated 8 U.S.C. § 1357(a)(2) (Count Two); (3) his arrest violated 8 C.F.R. § 287.8(c)(2)(ii) (Count Three); (4) his detention without an individualized bond hearing violates procedural due process (Count Four); and (5) his detention violates substantive due process (a second claim captioned "Count Three"). ECF 1 at ¶¶ 36–66. He asks the Court to order his immediate release. *Id.* at 13. Respondents answered on June 22, 2026, and Petitioner filed a traverse on June 25, 2026. ECFs 8, 9. Petitioner has since requested a ruling. ECFs 10, 11. On October 8, 2026, the Court ordered the parties to file status reports addressing the July 6, 2026, hearing, and both parties did so. ECFs 12–14. The parties have consented to proceed before a United States Magistrate Judge. ECFs 3, 6.

## II

The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A court may grant a petition and issue a writ of habeas corpus to a petitioner

who shows that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A noncitizen held by immigration authorities may petition for a writ of habeas corpus under § 2241 on the ground that his detention violates the Constitution or other federal laws. *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

III

Because Petitioner's order of removal is not administratively final, he remains detained under 8 U.S.C. § 1226(a) pending the completion of his removal proceedings. *See* 8 C.F.R. § 1241.1(a). Petitioner challenges both the manner of his arrest and his continued detention.

**A**

Respondents contend that Petitioner failed to exhaust his administrative remedies because he did not appeal the IJ's July 6, 2026, custody determination to the BIA. ECF 8 at 4; ECF 14 at 2–3. Petitioner acknowledges that he did not appeal, and the IJ's order reflects that he waived appeal. ECF 13 at 2, 8; ECF 14-1. Petitioner argues that exhaustion would be futile and should be excused because the BIA lacks the authority to adjudicate his constitutional claims, BIA review would cause undue delay, and his continued detention causes irreparable injury. ECF 9 at 3–5; ECF 13 at 8.

Exhaustion is not required by statute for a § 2241 petition, but courts may require prudential exhaustion. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Prudential exhaustion may be required where "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted). A detainee who is dissatisfied with an IJ's custody determination ordinarily must appeal to the BIA before seeking habeas review of that determination. *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th

Cir. 2011); *see also Diaz Reyes v. Mayorkas*, 854 F. App'x 190, 191 (9th Cir. 2021) (no abuse of discretion in requiring exhaustion of challenge to IJ's bond denial).

To the extent Petitioner's due process claims challenge the IJ's July 6, 2026, custody determination, those claims are unexhausted. The BIA could have reviewed whether the IJ applied the correct standard and whether the record supported the IJ's finding that Petitioner presents a flight risk, and it could have ordered Petitioner's release had it found error. Petitioner chose not to seek that review and instead waived his appeal. Excusing exhaustion in these circumstances would encourage the deliberate bypass of the administrative scheme that prudential exhaustion is designed to prevent. *See Puga*, 488 F.3d at 815. Petitioner's contentions that BIA review would be slow and that his detention causes irreparable injury do not warrant a different result.[3] Petitioner's arrest claims stand differently, because they challenge the conduct of the arresting officers rather than the IJ's custody determination. ECF 13 at 8. Because all of Petitioner's claims fail on the merits in any event, the Court addresses each of them.

**B**

Counts One through Three challenge the lawfulness of Petitioner's December 25, 2025, arrest. Petitioner contends that ICE officers arrested him without a warrant and without reasonable suspicion, in violation of the Fourth Amendment, and without reason to believe that he was likely to escape before a warrant could be obtained, in violation of 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2)(ii). ECF 1 at ¶¶ 36–53; ECF 9 at 5–7; ECF 13 at 4–5. Respondents contend that the remedy for an unlawful arrest is not release from custody. ECF 8 at 5–6.

---

[3] Every petitioner who challenges immigration detention is detained. If detention alone established irreparable injury for purposes of exhaustion, the exception would apply in every case, and the "deliberate bypass of the administrative scheme" that prudential exhaustion guards against would become the rule. *Puga*, 488 F.3d at 815 (internal quotation marks omitted). Indeed, the Ninth Circuit required exhaustion in *Leonardo* even though the petitioner there challenged his prolonged immigration detention and remained detained. 646 F.3d at 1159–61.

The Court assumes, without deciding, that Petitioner's arrest did not comply with § 1357(a)(2) and § 287.8(c)(2)(ii).[4] Even so, Petitioner has not shown that release is an available remedy. Habeas corpus tests whether a petitioner "can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment." *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923) (internal quotation marks omitted); *see also INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039–40 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred.").[5] Courts in this District have accordingly declined to order release based on alleged defects in a noncitizen's initial arrest. *See Jacinto Chacon v. Mullin*, No. 5:26-cv-03294-RAO, 2026 WL 2127177, at *3 (C.D. Cal. July 21, 2026); *Nicolas-Francisco v. Rios*, No. 5:26-cv-04104-JDE, 2026 U.S. Dist. LEXIS 174811, at *6–7 (C.D. Cal. Aug. 5, 2026) (denying release where petitioner's detention rested on IJ's flight-risk determination at subsequent bond hearing); *Papikyan*, 2026 WL 1455139,

---

[4] The record is disputed on this point. Petitioner alleges that he did not flee, ECF 1 at ¶¶ 5, 40–41, while the Form I-213 states that both men "attempted to flee" and that officers "pursued both males and detained them," ECF 1-1 at 2. Petitioner's status report characterizes the Form I-213 as referring only to "flight by another individual." ECF 13 at 4. Because the Court assumes that the arrest was unlawful, it need not resolve the dispute.

[5] Some courts have questioned whether *Bilokumsky* retains force, reasoning that it predates the modern habeas statute and arose from a challenge to a deportation order. *See Perdomo Rivera v. Mullin*, No. 26-cv-04197-KES, 2026 WL 2276935, at *3 n.1 (C.D. Cal. Aug. 6, 2026); *F.R.P. v. Wamsley*, No. 3:25-cv-01917, 2026 WL 482184, at *3 n.1 (D. Or. Feb. 19, 2026). The Supreme Court, however, relied on the same page of *Bilokumsky* in *Lopez-Mendoza*, decades after the habeas statute was recodified. 468 U.S. at 1039–40. *Bilokumsky* has not been overruled on this point. *See Papikyan v. Semaia*, No. 26-cv-01824, 2026 WL 1455139, at *1 n.3 (C.D. Cal. May 22, 2026). Moreover, *F.R.P.* itself recognized that *Bilokumsky* applies where, as here, the government has shown a sufficient ground for detention. 2026 WL 482184, at *3.

at *1; *Urias v. Warden-Facility Adm'r*, No. 5:26-cv-01972-JWH-DFM, 2026 WL 1419045, at *1 (C.D. Cal. May 20, 2026).

Petitioner's present custody does not rest on the December 25, 2025, arrest. It rests on § 1226(a) and on the IJ's July 6, 2026, determination, made after a hearing at which the government bore the burden of proof, that Petitioner presents a flight risk that cannot be mitigated by bond. ECF 14-1. Petitioner does not contend that the IJ applied the wrong legal standard, and he waived review of that determination by the BIA. *Id.*; ECF 13 at 2. Petitioner contends that the July 6, 2026, hearing did not decide whether ICE officers had reason to believe on December 25, 2025, that he was likely to escape. ECF 13 at 5. That is true, but it does not change the analysis. Whatever the lawfulness of the arrest, a neutral decisionmaker has since determined that Petitioner's detention is necessary to secure his appearance.

Petitioner relies on decisions in which courts in this District ordered release based on warrantless arrests. ECF 13 at 5 (citing, *inter alia*, *Martinez v. Mullin*, No. 5:26-cv-03850-MAR, 2026 U.S. Dist. LEXIS 226909, at *7–9 (C.D. Cal. Oct. 2, 2026), and *Perdomo Rivera*, 2026 WL 2276935, at *3). Those decisions are distinguishable. In each, the respondents did not substantively respond to the petitioner's § 1357(a)(2) claim, and the court treated the claim as unopposed. *Martinez*, 2026 U.S. Dist. LEXIS 226909, at *7–8; *Perdomo Rivera*, 2026 WL 2276935, at *1, *3. And in *Perdomo Rivera*, the IJ had denied bond for lack of jurisdiction, so no neutral decisionmaker had assessed whether the petitioner presented a flight risk. 2026 WL 2276935, at *2. Here, Respondents contend that release is not the appropriate remedy for an unlawful arrest, ECF 8 at 5–6.

Petitioner also contends that his arrest was an egregious Fourth Amendment violation. ECF 9 at 6–7. But the egregiousness exception on which he relies governs whether evidence must be suppressed in removal proceedings; it does not establish that his present detention, which rests on an independent custody determination, is unlawful.

*See Lopez-Mendoza*, 468 U.S. at 1050–51 (plurality opinion); *Martinez-Medina v. Holder*, 673 F.3d 1029, 1033–34 (9th Cir. 2011).

Accordingly, Petitioner has not shown that he is entitled to release on Counts One through Three.

**C**

Count Four alleges that Respondents violated procedural due process by detaining Petitioner without an individualized bond hearing. ECF 1 at ¶¶ 54–58. Petitioner has since received that hearing. ECF 14-1. Petitioner acknowledges that the July 6, 2026, hearing "affects the scope of Count Four," ECF 13 at 3, but contends that no post-deprivation hearing can cure the violation that occurred when he was arrested. *Id.* at 6–7.

The Court evaluates the claim under *Mathews v. Eldridge*, 424 U.S. 319 (1976), which weighs "the private interest that will be affected by the official action"; "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and "the Government's interest." *Id.* at 335; *see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

The first factor favors Petitioner. His interest in freedom from detention is substantial, and he has lived in the United States for many years with his family. ECF 1 at ¶ 20.

The second factor weighs heavily against him. The risk of an erroneous deprivation arises where no neutral decisionmaker has assessed whether a noncitizen's detention serves the permissible purposes of preventing flight and protecting the community. *See Zadvydas*, 533 U.S. at 690. Here, a neutral decisionmaker made that assessment. The IJ found, after a hearing at which the government bore the burden of proof, that Petitioner presents a flight risk, and explained that finding in a written order. ECF 14-1. Petitioner does not contend that he lacked notice, an opportunity to present evidence, or a neutral decisionmaker. The procedures available under § 1226(a)—"an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing

when circumstances materially change"—"sufficiently protected [the detainee's] liberty interest and mitigated the risk of erroneous deprivation." *Rodriguez Diaz*, 53 F.4th at 1202, 1209. Petitioner may still seek a further custody redetermination upon a showing of materially changed circumstances. 8 C.F.R. § 1003.19(e). But Petitioner's contention that a post-deprivation hearing cannot cure an earlier deprivation, ECF 13 at 6–7, cannot be reconciled with *Rodriguez Diaz*, which directs courts to consider "the process he received" and "the further process that was available to him." 53 F.4th at 1208.

As to the third factor, the government has a legitimate interest in ensuring the appearance of noncitizens at removal proceedings, and that interest is substantial where, as here, an IJ has found that the noncitizen presents a flight risk. *See Rodriguez Diaz*, 53 F.4th at 1208–09.

Weighing these factors, the Court concludes that Petitioner has not shown that his continued detention violates procedural due process.

D

Petitioner's substantive due process claim fails for similar reasons. He contends that his detention is arbitrary and bears no reasonable relation to any legitimate purpose because he has no criminal record, has U.S. citizen children, and has lived in the United States for many years. ECF 1 at ¶¶ 59–66; ECF 9 at 8; ECF 13 at 7. But civil immigration detention may serve the purpose of ensuring a noncitizen's appearance at removal proceedings, *Zadvydas*, 533 U.S. at 690, and an IJ has determined, after considering those same circumstances, that Petitioner presents a flight risk. ECF 14-1. Petitioner offers no other basis for concluding that his detention bears no reasonable relation to that purpose.

Because Petitioner's circumstances may change, including if his order of removal becomes administratively final, the denial is without prejudice.

IV

Accordingly, IT IS HEREBY ORDERED that:

1) The Petition is DENIED without prejudice; and

2) Judgment shall be entered dismissing this action without prejudice.

Dated: October 27, 2026

HON. DIANA M. KWOK
UNITED STATES MAGISTRATE JUDGE